EUROCOMPANY S.P.A., Plaintiff

v.

YURGRETTANSFLOT, THE OWNERS OF THE VESSEL;
and THE VESSEL M/V BUKTA KAMYSHOVAYA,
along with its gear, tackle and appurtenances,
Defendant and Defendants In Rem

GULF VLADIMIR, S.A., a Panamanian)
Corporation, Counter-claimant/Intervenor

v.

EUROCOMPANY S.P.A., Counterclaim Defendant

High Court of American Samoa
Trial Division

CA No. 44-02

February 27, 2003

Before KRUSE, Chief Justice, ATIULAGI, Associate Judge, and MAMEA, Associate Judge.

Counsel: For Plaintiff/Counterclaim Defendant, Paul Miller
    For Counter-claimant/Intervenor, Barry I. Rose and Craig
    Miller, *pro hac vice*

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

The unusual circumstances of this case bring before us an eclectic collection of international players: an Italian fruit company, a Soviet vessel, a Ukrainian joint stock company, a Panamanian corporation, and 2,405.0912 metric tons of Argentinean pears. The events that led to this litigation pre-date, and indeed, are linked to, the fall of the Soviet Union. In the latest chapter, we deny the pending motion for summary judgment.

## Background

Eurocompany S.P.A. ("Eurocompany") is a fruit trading company based in Italy. In July 1989, it commenced litigation in Italy against Yugrybtranssbyt, a Soviet state enterprise and then owner of the M/V Bukhta Kamyshovaya ("M/V Bukhta"). The suit, sounding in tort, arose out of a contract of carriage for 2,405.0912 metric tons of Argentinean pears. The litigation lingered until May 2001 when an Italian court entered a final judgment in favor of Eurocompany. At that point, the vessel had changed hands several times: following the breakup of the Soviet Union, it became property of the nation of Ukraine and was operated by a Ukrainian state enterprise; that entity, in turn, became privatized and known as Yugretransflot, a Ukrainian joint stock company; in 1997, Yugretransflot sold the vessel to the putative intervener, Gulf Vladimir, a Panamanian corporation.

In any event, Eurocompany believed that under Italian law, the judgment gave rise to a maritime lien, which attached to the M/V Bukhta. Therefore when the M/V Bukhta found its way into the Pago Pago Harbor, Eurocompany attempted to arrest it. On May 13, 2002, it filed a complaint in Admiralty in this court against M/V Bukhta Kamyshovaya ("Bukhta"), and its former owners, Yugretransflot. We then issued an order allowing for the arrest of the vessel only if Eurocompany met certain conditions.[1] In response, on May 22, 2002, the current owner, Gulf Vladimir, filed a Vessel Owner's Claim and Statement of Right. The motion contested Eurocompany's right to arrest the vessel. In essence, they argued that this court did not have *in rem* jurisdiction over the M/V Bukhta.

On June 24, 2002, Eurocompany abandoned ship; it filed a notice to

---

[1] Eurocompany never met those conditions and we never finalized an order arresting the vessel.

voluntarily dismiss the action pursuant to T.C.R.C.P. 41(a)(1)(i).[2] Three days later, Gulf Vladimir filed a counterclaim for declaratory judgment.[3] Then on December 10, 2002, Gulf Vladimir filed a motion for summary judgment. This motion is presently before us.

## Discussion

■■■ Under T.C.R.C.P. 41, voluntary dismissal, if timely filed, "is available as a matter of unconditional right . . . and is self executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required." *Marex Titanic, Inc. v. Wrecked and Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993) (citations omitted). In order to be effectuated, the dismissal must be filed "before service by the adverse party of an answer or of a motion for summary judgment." T.C.R.C.P. 41(1)(i). The only question, then, is whether Gulf Vladimir either served an answer or moved for summary judgment before June 24, 2002, the day Eurocompany submitted their notice of dismissal.

■ It is clear that Gulf Vladimir's pre-June 24th strategy was anchored on the presumption that we did not have the power to arrest the M/V Bukhta. That is, their motions contested our *in rem* jurisdiction over the vessel. That was the equivalent of a 12(b)(1) motion for lack of jurisdiction. It is well settled that "the plaintiff's right to a voluntary dismissal is not extinguished by the filing of a motion to dismiss under [T.C.R.C.P. 12(b)]." 8 JAMES MOORE, MOORE'S FEDERAL PRACTICE § 41.33(5)(c)(viii)(A) (3d ed. 1999).[4] And, despite Gulf Vladimir's contentions to the contrary, because the vessel was never actually arrested, our jurisdiction was never actually "invoked"; it was merely requested.[5]

---

[2] T.C.R.C.P. 41 allows for a plaintiff to voluntarily dismiss an action, "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs[.]"

[3] In that motion, Gulf Vladimir labeled itself an "intervener." However, at no time had they actually moved to intervene and at no time did we grant them permission to intervene. In any event, our decision does not depend on this point.

[4] The only exception is if the defendant brings a 12(b)(6) motion which is converted into a motion for summary judgment. *Id.* at § 41.33(5)(c)(viii)(A). In this case, the motion contesting arrest cannot in any way be viewed as a motion to dismiss.

[5] Along the same lines, Eurocompany's complaint was also directed at Yugretransflot, in their personal capacities. But at no time did we purport to exercise personal jurisdiction over Yugretransflot, and very much doubt that we had the power to do so. *See generally* A.S.C.A. § 3.0103.

■ Furthermore, we do not interpret Gulf Vladimir's objection to our *in rem* jurisdiction as the equivalent of an answer. Admiralty procedure provides the owner of a vessel with a specific time frame in which to file a claim of ownership (10 days) and a *separate* time frame in which to serve an answer (20 days). T.C.R.C.P. Supplemental Admiralty and Maritime Claims, Rule C(6). Thus, Rule C(6) clearly distinguishes between an ownership claim and an answer. Were we to adopt Gulf Vladimir's position, we would be doing a disservice to the clear meaning and purpose of Rule C(6). *See, e.g., United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1, 4 (D.D.C. 1996) (distinguishing between claim and answer under Rule C(6)); Fed. R. Civ. P. Supplemental Admiralty and Maritime Claims, Rule C(6) advisory committee's note (the rule "requires claimants to come forward and identify themselves at an early stage of the proceedings—before they could fairly be required to answer.").

Finally, Gulf Vladimir's June 27 and December 10 motions cannot salvage their claims. Those motions were filed after Eurocompany's notice of dismissal and were thus too late.

## Conclusion

Unfortunately for Gulf Vladimir, their ship has sailed. The motion for summary judgment is, therefore, denied.

It is so ordered.